**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| JULIET KAGNO, on behalf of herself and others similarly situated, | Case No.: 8:17-cv-1468-T-26AEP |
| Plaintiff, |  |
| v. |  |
| BUSH ROSS, P.A., |  |
| Defendant. |  |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Introduction**

The focus of this case is the alleged failure of Bush Ross, P.A. ("Defendant" or "Bush Ross") to comply with section 1692g of the Fair Debt Collection Practices Act ("FDCPA") with respect to initial debt collection letters it sent to Florida consumers. Specifically, Juliet Kagno ("Plaintiff") alleges that the validation notice required by the FDCPA was both insufficient and ineffective, as it failed to properly advise consumers of their validation rights, and was overshadowed and contradicted by Defendant's simultaneous demand that those consumers pay their accounts in full within the same 30-day period reserved for validation, or else they could face the recording of a claim of lien by their homeowners' associations. Bush Ross denies any liability or that its practices violated the FDCPA.

Following initial discovery efforts and related litigation, and with Plaintiff's class certification motion still pending, the parties reached an agreement to resolve this matter whereby Defendant will create a non-reversionary settlement fund of $35,000 for the benefit of the class,

1

allowing for individual cash payments to each participating class member in the likely amount of $100 to $200, depending upon class participation. And separate from this class fund, Defendant also will pay: (1) all costs of class notice and settlement administration, which will include the mailing of a detailed notice to all potential class members as well as a straightforward claim form and return envelope; (2) full statutory damages of $1,000 to Plaintiff; and (3) subject to this Court's approval, class counsel's attorneys' fees, costs, and expenses of up to $55,000. Of note, this settlement may even exceed the class-wide statutory damages allowed by the FDCPA, which are capped by law at one percent of Defendant's net worth.

Finally, and as a result of this lawsuit and settlement, Defendant changed its debt collection letters (and will maintain those changes in the future) to address the deficiencies alleged by Plaintiff. This will benefit not only Plaintiff and the settlement class, but also any other consumers who receive Defendant's debt collection letters in the future.

Considering the statutorily-limited damages available to the settlement class under the FDCPA, as well as the prospective relief afforded by the parties' agreement, the settlement here represents an excellent result for class members. Accordingly, Plaintiff respectfully requests, unopposed by Defendant, that this Court enter the accompanying order granting preliminary approval, certifying the proposed class for settlement purposes, appointing her class representative, appointing her counsel class counsel, and directing the notice program described herein.

## Summary of Class Settlement

**I. Bush Ross will provide cash compensation to class members as well as maintain changes to its initial debt collection communications moving forward.**

The parties' Class Action Settlement Agreement ("Agreement") is attached to the accompanying Declaration of Michael L. Greenwald and defines a settlement class under Rule 23(b)(3) comprised of:

> All persons (a) with a Florida address, (b) to whom Bush Ross, P.A., (c) from June 16, 2016 through November 20, 2017, (d) in connection with an attempt to collect an alleged debt incurred for personal, family, or household purposes, (e) mailed an initial debt collection communication not returned to Bush Ross, P.A. as undeliverable that: (1) stated "[u]nless the entire sum is paid within thirty (30) days of the date of this letter, we may proceed with action to protect the Association's interests, including, but not limited to the recording of a claim of lien, which can result in additional attorney's fees, costs and interest," and/or (2) stated "[i]f you notify the attorney named below within the said 30-day period that the aforesaid debt, or any portion thereof, is disputed, the attorney named below shall obtain written verification of said debt . . . and mail same to you," and/or (3) failed to provide a statement that, upon the consumer's written request within the 30-day period after receipt of the communication, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Defendant represents that there are no more than 1,605 class members, including Plaintiff.

Class members who submit a timely, valid claim form will receive a pro-rata share of the $35,000 settlement fund. Assuming a participation rate of 10% to 20%, claimants here would likely receive between approximately $100 and $200 each. To the extent any settlement checks go uncashed after the claims administrator takes all reasonable steps to forward checks to any forwarding addresses, there will be a second distribution to participating class members if the distribution would allow at least $10 per person. Thereafter, any remaining residual funds from uncashed checks will be redirected to Bay Area Legal Services Inc. as a *cy pres* recipient—not revert to Defendant.

Another significant benefit for the class, and for Florida consumers generally, is Defendant's change to its initial debt collection letters to ensure that those letters contain the disclosures required by 15 U.S.C. § 1692g(a). That is, Defendant has revised its initial debt collection letters to address concerns raised here.

Separate from the class settlement fund, Defendant also will pay all costs for class notice and settlement administration to ensure not only that each class member receives direct mail notice along with a claim form and return envelope, but also that all claimants receive their shares of the

settlement fund following court approval. An agreed third-party administrator, First Class, Inc. ("First Class"), will perform these services using class members' last known addresses based on Defendant's own records, while taking all reasonable steps necessary to ensure that each class member receives notice and then payment where appropriate, including performing advanced searches and updating addresses for any mail returned as undeliverable.

Finally, Defendant also will separately pay $1,000 in statutory damages to Plaintiff and, subject to court approval, an award of attorneys' fees, costs, and expenses to class counsel not to exceed $55,000. This proposed fee and expense award, which the parties separately negotiated only after the other settlement terms had been finalized, will be the subject of a separate motion submitted at the conclusion of this case.

## II. The agreement provides for direct mail notice to all class members with claim form included.

To inform class members of the significant benefits resulting from this settlement and their options, the parties' agreement provides for a robust notice program to send direct mail notice to each class member. That notice will include a separate claim form and return envelope for those class members choosing to participate in the settlement fund.

Defendant will provide the names and recent addresses of all class members to First Class, as Defendant's business records reflect the necessary contact information for each of the letter recipients included in the settlement class. First Class will then take all reasonable steps necessary to ensure that each class member receives direct mail notice, including updating addresses by reference to U.S. Postal Service databases, sending the notices with forwarding addresses requested, and for any notices returned undeliverable, undertaking advanced searches to obtain updated addresses. The proposed class notice and claim form are attached as exhibits to the Agreement.

**Argument**

**I. This Court should certify the proposed settlement class.**

Plaintiff's class certification motion was pending at the time the parties reached their settlement. Thus, Plaintiff respectfully directs this Court to her prior filing, ECF No. 33, for a full analysis of the appropriateness of certification in this FDCPA action stemming from Bush Ross's initial debt collection letters. For purposes of the instant request, however, Plaintiff will briefly recap the relevant law supporting certification, particularly in the context of the proposed settlement class. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, Plaintiff easily satisfies the numerosity requirement because the settlement class exceeds 2,000 members. Moreover, there should be no difficulty identifying class members because Bush Ross possesses class members' names and last-known mailing addresses, which will be provided to First Class for notice and administration purposes.

Second, Rule 23(a)(2) "[c]ommonality requires at least one issue common to all members of the class, but does not require that all factual and legal questions be common." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004). This element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id.* ("Similarly, a plaintiff satisfies the commonality requirement when all class members received

5

the same collection letter."). Here, all class members' claims originate from Bush Ross's issuance of a standardized initial debt collection letter, so each person has an identical FDCPA claim based upon a nearly identical debt collection letter he or she received. For these reasons, claims like those asserted by the class are routinely certified as class actions. *See, e.g.*, *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008) (Lazzara, J.) (finding commonality where "[a]ll received the identical or substantially similar letter from Defendant"); *Agan*, 222 F.R.D. at 698 (finding commonality satisfied where "[a]ll of the proposed class members received the same form letter and claim of lien, and all of the proposed class members have the same legal question of whether the form letter and claim of lien violated the FDCPA and FCCPA").

Third, typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004). Such is not the case here, as Plaintiff[1] and the class all received letters that contained, and omitted, language Plaintiff contends violated the

---

[1] While Defendant does not oppose class certification for settlement purposes, it reserves its right to challenge class certification should the settlement not be approved and the parties continue their litigation.

6

FDCPA. Plaintiff thus possesses the same interests and has suffered the same injury as each class member, and therefore asserts identical claims and seeks identical relief on behalf of the unnamed class members. As a result, typicality is met. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied."); *Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter.").

Fourth, this Court must also determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). That is, Plaintiff must show that she can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to those of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (Lazzara, J.) (certifying class action). Here, her claims are perfectly aligned with class members' claims, and Plaintiff is committed to vigorously pursuing all such claims with the class's best interests in mind. *See* ECF No. 33-2. What's more, Plaintiff has no interests adverse to, or which directly and irrevocably conflict with, the interests of other class members, and she stands willing and prepared to serve both this Court and the proposed class. Plaintiff thus should be appointed class representative.

Moreover, Plaintiff has retained counsel who are experienced in complex class action litigation. *See* Greenwald Decl. ¶¶ 7-23. Greenwald Davidson Radbil PLLC ("GDR") has represented dozens of classes nationwide[2] and will vigorously prosecute this action and protect the

---

[2]   *See, e.g.*, *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499 (M.D. Fla. June 5, 2017) (Merryday, J.); *Johnston v. Kass Shuler, P.A.*, No. 8:16-cv-3390-T-23AEP, 2017 WL 1231070 (M.D. Fla. Mar. 29, 2017) (Merryday, J.); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-1175-JEO, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017); *Jallo v. Resurgent Capital Servs., L.P.*, No. 4:14-cv-00449, 2017 WL 914291 (E.D. Tex.

interests of all absent class members here. Accordingly, in addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g) and should be appointed class counsel.

Lastly, as Plaintiff seeks certification pursuant to Rule 23(b)(3), she must also demonstrate that questions of law and fact common to the class predominate over any questions affecting only individual members, and that, on balance, class treatment is superior to other methods available for adjudicating this controversy. "Under Rule 23(b)(3) it is not necessary that *all* questions of law or fact be common, but only that *some* questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (emphasis added). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.

Here, common issues necessarily predominate because Plaintiff's claims are based on standardized conduct by way of Bush Ross's use of form initial debt collection letters. Indeed, courts routinely find that claims based on form debt collection letters satisfy Rule 23(b)(3). *See, e.g.*, *Roundtree*, 304 F.R.D. at 662 ("Here, the issues of whether Bush Ross is a debt collector and engaged in collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes. Furthermore, the claims of Roundtree and the class members derive from the same legal theories,

---

Mar. 7, 2017); *Macy v. GC Servs. Ltd. P'ship.*, No. 3:15-cv-00819-DJH-CHL, 2017 WL 489420 (W.D. Ky. Feb. 6, 2017); *Rhodes v. Nat'l Collection Sys., Inc.*, 317 F.R.D. 579 (D. Colo. 2016); *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015) (Whittemore, J.); *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D. Miss. 2015); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *3 (S.D. Fla. Feb. 23, 2015).

involve the same collection letters and notices and fee collection practices, and warrant the same statutory damages as a remedy."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"). The same holds true here.

And when evaluating the superiority requirement of Rule 23(b)(3), this Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in this particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims here all arise from the same debt collection letters, the allegations involve standardized conduct, and each class member is likely to have suffered relatively small statutory damages, a class action is the superior vehicle for determining the rights of absent class members. *See Roundtree*, 304 F.R.D at 662 ("Here, given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which Roundtree and the class members' claims under the FDCPA should be adjudicated."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary,

9

Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

The proposed settlement class correspondingly should be certified.

### II. This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Next, Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). Once the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33. A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the

10

existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable, and should be preliminarily approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ("in reviewing a proposed settlement, as here, the Court must take into account the clear policy in favor of encouraging settlements"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) ("[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits."); *Newberg*, § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### A. There was no fraud or collision behind the parties' settlement.

To start, the parties' arm's-length settlement negotiations demonstrate the fairness of the settlement that was reached, and that it is not a product of fraud or collusion. The parties engaged in contested litigation from the outset, including the filing of a motion to strike and a motion to quash subpoenas. Counsel for Defendant and Plaintiff then zealously negotiated on behalf of their clients, and settlement was reached only after the exchange of multiple written settlement demands and counteroffers, and after multiple telephone conferences among experienced counsel. Moreover, Plaintiff already had filed her class certification motion for Defendant to review and

assess, and the parties also had exchanged key discovery—both formally and informally—to inform and direct their negotiations, as further detailed below.

### B. The complexity, expense, and likely duration of the litigation favors preliminary approval.

It bears repeating that there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Every class action—indeed, every case—involves some level of uncertainty on the merits. This action was no different. Plaintiff's class certification motion remained outstanding at the time of settlement, with related briefing still ongoing. Though she maintains confidence in her position, obtaining class certification over Defendant's objection was no guarantee. Likewise, the parties disagree over the merits of Plaintiff's claims, so dueling summary judgment motions surely would have followed this Court's ruling on certification. Then, if necessary, trial and likely appeals would have come next.

Given these considerations, preliminary approval of the settlement is appropriate to avoid the uncertainties of potentially years more of continued litigation. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("Furthermore, absent final approval of the Amended Settlement Agreement, litigation of this dispute could prove to be long and expensive.

In particular, the likely next steps in this case—e.g., additional discovery and dispositive motions—would require substantial time by the parties' attorneys. Although there is nothing to indicate that Defendant would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Amended Settlement Agreement."); *Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The parties have sufficiently developed the factual record to enable Plaintiff and class counsel to make a reasoned judgment concerning settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, while the litigation has been pending only since June 2017, the settlement was achieved with a clear view as to the strengths and weaknesses of the case. As earlier indicated, at the time of settlement, Plaintiff already had made her case for the appropriateness of class certification. *See generally* ECF No. 33. Defendant tried—unsuccessfully—to streamline the allegations through its failed motion to strike. *See* ECF Nos. 11, 12. This Court quashed two subpoenas issued by Defendant to Plaintiff's former employers. ECF No. 28. And in granting

Plaintiff's motion to quash, this Court set clear boundaries for the scope of discovery necessary to defend against Plaintiff's claims. *Id*.

Additionally, the parties have exchanged both formal and informal discovery regarding the size of the proposed class, Defendant's net worth, and the scope of Defendant's alleged misconduct, allowing Plaintiff to evaluate potential class damages. And "because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation." *Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014). Thus, both the parties and this Court are adequately informed to evaluate the fairness of the settlement presented. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the potential recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

No matter, there are no such concerns here because Plaintiff has secured a recovery for the class that exceeds what likely would have been possible at trial. This is because the FDCPA limits class-wide statutory damages to the lesser of $500,000 or one percent of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B). In that regard, Defendant argued that its balance sheet net worth, per *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000), is actually *negative*—allowing for potentially no class recovery at all, even assuming liability. *Id.* at 1004 ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Nevertheless, to fully resolve this matter, Defendant will establish a class settlement fund of $35,000 in line with the $3.5 million stipulated net worth it recently agreed to in the *Roundtree* litigation before Judge Whittemore.

Defendant also will separately pay $1,000 in statutory damages to Plaintiff—the most to which she is entitled under the statute. Accordingly, both Plaintiff and the class will do as well as, if not better than, they could have hoped for at trial, *without* the attendant risks and delays of continued litigation. Also noteworthy, even assuming a class victory at trial, there was no guarantee of full statutory damages because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

In other words, despite a victory in the class's favor, this Court may still have awarded class members little in the way of statutory damages, or even no damages at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this

case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). In contrast, the immediate relief provided by the settlement is substantial.

Class members' anticipated individual recoveries of between approximately $100 and $200 each also compare favorably to other similar FDCPA class settlements recently approved throughout the country. *See, e.g.*, *Beck v. Thomason Law Firm, LLC*, No. 16-570, ECF No. 24 (D.N.M. Oct. 10, 2017) ($68.70 per class member); *Considine v. Sharinn & Lipshie, P.C.*, No. 15-4816, ECF No. 40 at 3 (E.D.N.Y. Aug. 8, 2017) ($24.17 each); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at *4 (M.D. La. Sept. 14, 2016) ($52.28 each); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 each); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF No. 33 at 3 (E.D. Mo. July 8, 2016) ($39.06 each); *Schuchardt*, 314 F.R.D. at 678 ($15.10 each); *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 700-01 (S.D. Fla. 2009) (maximum per-class member recovery was $1.24).

What's more, Plaintiff also secured prospective relief in the form of Defendant's changed initial debt collection letter—a public benefit that was not necessarily available at trial, as courts disagree on whether the FDCPA allows such injunctive relief. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA."). In sum, considering the FDCPA's statutory damages cap and the benefits obtained here in comparison to those likely at trial demonstrates the fairness and reasonableness of the negotiated resolution, particularly given the early stage of these proceedings.

### E. The opinions of Plaintiff and class counsel strongly favor preliminary approval.

Lastly, both Plaintiff and class counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. Further, proposed class counsel are experienced class action litigators, having successfully prosecuted consumer protection cases like this on a class-wide basis in many jurisdictions across the country. *See* Greenwald Decl., ¶ 8 (collecting cases).

A strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Correspondingly, the parties' and counsel's strong support for this settlement militates toward approval.

### III. This Court should approve the proposed notice to class members.

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

17

Here, the parties have agreed to a robust notice program to be administered by a highly experienced third-party class administrator that will use all reasonable efforts to provide direct mail notice to each class member based upon names and recent addresses provided by Bush Ross. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) the process and time limit for submitting a claim for a share of the settlement fund; (6) information regarding class counsel's request for an award of attorneys' fees, costs, and expenses; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. In addition, and to make it as easy as possible for class members to participate, each notice will include a one-page claim form and return envelope. Copies of the proposed notice and claim form are attached to the Agreement as Exhibits B and C, respectively.

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved by this Court. *See* Fed. R. Civ. P. 23(c)(2)(A).

### IV. This Court should schedule a final fairness hearing.

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Plaintiff

requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement, certifying the proposed settlement class, appointing Plaintiff as class representative and her counsel as class counsel, and directing notice in the manner described above. Defendant does not oppose this relief.

Dated:  December 1, 2017	Respectfully submitted,

/s/ Michael L. Greenwald
Michael L. Greenwald
FL Bar No. 0761761
Jesse S. Johnson
FL Bar No. 0069154
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2017, I electronically filed the foregoing with the Clerk of the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Michael L. Greenwald
Michael L. Greenwald