## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

———————————————————————— x
                                    :    Case No.: 8:17-cv-1468-T-26AEP

JULIET KAGNO, on behalf of herself and    :
others similarly situated,                    :
                                    :
                 Plaintiff,          :
                                    :
        v.                                 :
                                    :
BUSH ROSS, P.A.,                     :
                                    :
               Defendant.       :
———————————————————————— x

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

### Introduction

The settlement now before this Court for final approval will provide 355 participating class members[1] over $98 each in statutory damages, which compares extremely favorably with other recent class settlements under the Fair Debt Collection Practices Act ("FDCPA") for allegedly deficient collection letters. The class's aggregate recovery of $35,000 is significant because it may exceed the best possible outcome at trial, even assuming complete victory for Juliet Kagno ("Plaintiff") and the class. Further, Defendant separately will pay $1,000 to Plaintiff—her

---

[1]     The parties initially estimated 1,605 potential class members, but after de-duplication of Bush Ross, P.A.'s ("Defendant" or "Bush Ross") records in connection with notice mailing, they discovered there are a maximum of 1,577 unique persons who are potential members of the settlement class. As of this filing, 339 class members submitted valid claims for their share of the settlement fund, while another 16 class members submitted claims either postmarked after the cutoff or received after the cutoff but with missing or illegible postmarks. The parties conferred and agreed to allow the additional 16 claims, subject to this Court's approval. Thus, each of the 355 participating class members will receive individual recoveries of approximately $98.59 should this settlement be approved.

1

maximum potential individual damages recovery under the statute—and already has changed its business practices by making adjustments to its debt collector letters in response to this lawsuit.

Plaintiff is pleased to report that after a successful direct mail notice program, the class participation rate exceeds 22%, not a single class member objected to the settlement, and only one sought exclusion. In light of such strong support from class members, as well as the monetary and other relief provided, Plaintiff respectfully requests that this Court finally approve the parties' class settlement and confirm certification of the settlement class.

Defendant does not oppose this relief.

### Summary of the Class Settlement

**I.  Bush Ross will provide $35,000 in cash compensation to class members and maintain changes to its initial debt collection communications moving forward.**

This Court previously certified a settlement class under Rule 23(b)(3) comprised of all persons in Florida to whom Bush Ross mailed, between June 16, 2016 and November 20, 2017, an initial debt collection communication not returned as undeliverable that: (1) stated "[u]nless the entire sum is paid within thirty (30) days of the date of this letter, we may proceed with action to protect the Association's interests, including, but not limited to the recording of a claim of lien, which can result in additional attorney's fees, costs and interest"; and/or (2) stated "[i]f you notify the attorney named below within the said 30-day period that the aforesaid debt, or any portion thereof, is disputed, the attorney named below shall obtain written verification of said debt . . . and mail same to you"; and/or (3) failed to provide a statement that, upon the consumer's written request within the 30-day period after receipt of the communication, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. *Kagno v. Bush Ross, P.A.*, No. 17-1468, 2017 WL 6026494, at *1 (M.D. Fla. Dec. 4, 2017) (Lazzara, J.).

There are a maximum of 1,577 unique persons in the settlement class, of which none objected, only one opted out, and 355 submitted valid claim forms. Thus, with a healthy claims rate of over 22%, each class member will receive approximately $98.59. Significantly, the $35,000 settlement fund likely exceeds the FDCPA's cap on class-wide statutory damages of 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). And should any settlement checks go uncashed after First Class, Inc. ("First Class")— the Court-approved class administrator—takes all reasonable steps to forward checks to any forwarding addresses, there will be a second distribution to participating class members if it allows at least $10 per person. If not, or for any remaining funds after the second distribution, all remaining settlement proceeds will be directed to Bay Area Legal Services Inc., as approved by this Court.

What's more, another significant recovery for the class—and for Florida consumers generally—is Defendant's agreed change to its initial debt collection letters to ensure they contain the disclosures required by 15 U.S.C. § 1692g(a). In other words, Defendant has revised its initial debt collection letters to address the very concerns raised in this litigation.

## II. Defendant separately will pay all notice and administration costs, an individual damages award to Plaintiff, as well as class counsel's reasonable attorneys' fees, costs, and litigation expenses.

Separate from the $35,000 class settlement fund, Defendant also has paid all costs for issuing class notice and administering the settlement to ensure not only that each class member received direct mail notice along with a claim form and return envelope, but also that all claimants receive their shares of the settlement fund after court approval. First Class performed these

services, and will continue to do so for settlement checks, using class members' last known addresses based on Defendant's own records. It also undertakes reasonable steps necessary to ensure that each class member received notice and then payment where appropriate, including performing advanced address searches and updating addresses for any mail returned as undeliverable.

Defendant also will separately pay $1,000 in statutory damages to Plaintiff and, subject to court approval, an award of attorneys' fees, costs, and litigation expenses to class counsel not to exceed $55,000. Plaintiff's individual damages recovery is the most to which she is entitled under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). And class counsel's proposed fee and expense award, which is the subject of a separate motion filed concurrently herewith, is the product of separate negotiations begun only after the class settlement terms had been finalized.

### III. The parties received no objections and only one exclusion from class members, while 355 other class members submitted claims to participate in the settlement fund.

As noted above, with the assistance of First Class, the parties disseminated direct mail notice of the settlement to each class member using the names and last known addresses found in Defendant's records. Included with the class notice was a straightforward, one-page claim form to be completed and returned by each class member who wished to partake in the settlement fund. Prior to the mailing, First Class took its usual initial steps of de-duplicating class members' records and updating addresses through the U.S. Postal Service. *See* Affidavit of Bailey Hughes, attached as Exhibit A, at ¶¶ 4-6. Then, pursuant to this Court's order, it mailed class notices on December 22, 2017. *Id*. at ¶ 7.

For the notices subsequently returned as undeliverable with no forwarding addresses, First Class also undertook skip-trace search measures to attempt to locate updated addresses for those particular class members. *Id*. at ¶ 11. These efforts resulted in the re-mailing of 172 notices to new

addresses, only 41 of which were again returned as undeliverable. *Id*. Plaintiff is proud to report that the class's reaction has been overwhelmingly positive—not a single person has lodged any objection to the settlement, and just one person has requested exclusion. *Id*. at ¶¶ 12-13. At the same time, the parties received 339 timely, valid claims, plus another 16 late claims that they decided to accept as valid, for a total of 355 claimants representing over 22% of potential class members. *Id*. at ¶¶ 14-15.

Also significant, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act ("CAFA"), either. Such strong support confirms the fairness and reasonableness of the settlement's terms.

## Argument

### I. This Court should confirm its certification of the settlement class.

This Court previously certified the class for settlement purposes. *Kagno*, 2017 WL 6026494, at *1. Plaintiff agrees with the Court's reasoning and sees no need to revisit certification in connection with final approval. Plaintiff respectfully submits that this Court should confirm its certification of the settlement class.

### II. This Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23 and Eleventh Circuit law.

To analyze the reasonableness and adequacy of a class action settlement under Rule 23(e), district courts in this Circuit are to consider the following: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Each factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable, and thus should be approved. And in applying these factors, this Court should be guided by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ("in reviewing a proposed settlement, as here, the Court must take into account the clear policy in favor of encouraging settlements"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) ("[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits."); 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

**A.  There was no fraud or collusion behind the parties' settlement.**

Beginning with the first factor, the parties' arm's-length settlement negotiations demonstrate the fairness of the settlement achieved, and that it is not a product of fraud or collusion. Against the backdrop of contested litigation that included the early filing of a motion to strike, a motion to quash subpoenas, and Plaintiff's motion for class certification, counsel for Defendant and Plaintiff then zealously negotiated on behalf of their clients. They reached a settlement only after exchanging multiple written settlement demands and counteroffers, with multiple telephone conferences in between, and with the benefit of Plaintiff's arguments for certification in the record. Moreover, the parties had exchanged key discovery—both formally and informally—to direct their negotiations, as further detailed below.

**B. The complexity, expense, and likely duration of the litigation favors final approval.**

As to the second factor, it bears repeating that there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Every class action involves some level of uncertainty on the merits, and this case was no exception. Plaintiff's class certification motion remained pending at the time of settlement, and while she maintains confidence in her position, there was no guarantee she would obtain certification over Defendant's objection. The parties likewise disagree over the merits of Plaintiff's claims, so summary judgment motions surely would have followed this Court's ruling on class certification. If necessary, trial and likely appeals would have come next.

Given the considerable time and resulting expense entailed in such additional motion practice, approval of this settlement, now, is appropriate to avoid the uncertainties of potentially years more of continued litigation. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("Furthermore, absent final approval of the Amended Settlement Agreement, litigation of this dispute could prove to be long and expensive. In particular, the likely next steps in this case—e.g., additional discovery and dispositive motions—would require substantial time

by the parties' attorneys. Although there is nothing to indicate that Defendant would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Amended Settlement Agreement."); *see also Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The parties have sufficiently developed the factual record to enable Plaintiff and class counsel to make a reasoned judgment concerning settlement.

Moving to the third factor, courts must consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, while the litigation has been pending only since June 2017, the settlement was nevertheless achieved with a clear view as to the strengths and weaknesses of Plaintiff's case. As earlier indicated, Plaintiff already had made her case for the appropriateness of class certification. *See generally* ECF No. 33. Additionally, Defendant had tried—unsuccessfully—to streamline the allegations through a motion to strike. *See* ECF Nos. 11, 12. This Court quashed two subpoenas issued by Defendant to Plaintiff's former employers. ECF No. 28. And in granting Plaintiff's motion to quash, this Court set clear boundaries for the scope of discovery necessary to defend against Plaintiff's claims. *Id.*

Moreover, the parties have exchanged both formal and informal discovery regarding the size of the proposed class, Defendant's net worth, and the scope of Defendant's alleged misconduct, allowing Plaintiff to evaluate potential class damages. And "because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation." *Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014). Accordingly, both the parties and this Court are adequately informed to evaluate the fairness of the settlement presented, and that evaluation favors approval. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, particularly in comparison to the range of possible recovery, favors final approval.

Turning to the fourth and fifth factors, this Court also is to consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the potential recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

No matter, such concerns do not exist here because Plaintiff has secured a recovery for the class that exceeds what likely would have been possible at trial. That is, the FDCPA limits class-

wide statutory damages to the lesser of $500,000 or one percent of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B). In that regard, Defendant argued that its balance sheet net worth, per *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000), is minimal—allowing for potentially no class recovery at all, even assuming liability. *Id*. at 1004 ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities).

Nevertheless, to fully resolve this matter, Defendant will establish a class settlement fund of $35,000 in line with the $3.5 million stipulated net worth it recently agreed to in the *Roundtree* litigation before Judge Whittemore. *See Roundtree v. Bush Ross, P.A.*, No. 14-357, 2015 WL 5559461, at *2 (M.D. Fla. Sept. 18, 2015) (Whittemore, J.). Defendant also will separately pay $1,000 in statutory damages to Plaintiff—the most to which she is entitled under the statute. Accordingly, both Plaintiff and the class will do as well as, if not better than, they could have hoped for at trial, *without* the attendant risks and delays of continued litigation.

Besides, even assuming a class victory at trial, there was no guarantee of full statutory damages. This is because the FDCPA's damages provision is permissive rather than mandatory, meaning the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

Correspondingly, even provided a victory in the class's favor, this Court may still have awarded class members little in the way of statutory damages, or even potentially no damages at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In

light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). In contrast, the relief provided by the parties' settlement is both immediate and substantial.

Class members' individual recoveries of approximately $98 each compare very favorably to other similar FDCPA class settlements recently approved throughout the country. *See, e.g.*, *Beck v. Thomason Law Firm, LLC*, No. 16-570, ECF No. 24 (D.N.M. Oct. 10, 2017) ($68.70 per class member); *Considine v. Sharinn & Lipshie, P.C.*, No. 15-4816, ECF No. 40 (E.D.N.Y. Aug. 8, 2017) ($24.17 each); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150 (D. Me. Feb. 21, 2017) ($42 each); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at *4 (M.D. La. Sept. 14, 2016) ($52.28 each); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ($10.92 each); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF No. 33 at 3 (E.D. Mo. July 8, 2016) ($39.06 each); *Chamberlin v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 15-2361, ECF No. 44 (D.N.J. June 2, 2016) ($12.62 each); *Schuchardt*, 314 F.R.D. at 678 ($15.10 each); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ($10 each).

What's more, Plaintiff also secured prospective relief in the form of Defendant's changed initial debt collection letters—a public benefit that was not necessarily available at trial, as courts disagree on whether the FDCPA allows such injunctive relief. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA."). Accordingly, in view of the FDCPA's statutory damages cap and the benefits obtained here in comparison to those likely at trial, the resolution negotiated is both fair and reasonable, particularly given the early stage of these proceedings.

**E. The opinions of Plaintiff and class counsel, as well as the class's overwhelmingly positive reaction, strongly support final approval.**

Finally, Plaintiff's and class counsel's support for the settlement, coupled with the lack of any opposition from class members or governmental entities, favors its approval. Both Plaintiff and class counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. Class counsel have successfully prosecuted dozens of consumer protection cases like this on a class-wide basis in many jurisdictions across the country. *See* Declaration of Michael L. Greenwald, ¶ 9 (collecting cases), attached as Exhibit A to Plaintiff's contemporaneously filed Unopposed Motion for Approval of an Award of Attorneys' Fees, Costs, and Expenses. Their opinion here is based upon decades of collective experience. *Id.*, ¶¶ 7-27.

It follows that a strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Additionally, the class's overwhelmingly positive reaction has now reinforced that initial presumption. After a successful direct mail notice campaign, not a single class member voiced any

objection to the settlement, only one person opted out, and 355 class members submitted claims—accounting for more than 22% of potential class members. No objections resulted from CAFA notice, either. This overwhelmingly favorable reaction to the settlement supports its approval. *See James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (Merryday, J.) ("Also, no class member objects to the settlement, and only thirty-one prospective class members requested exclusion from the class. The absence of opposition to the settlement militates heavily toward approval."); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, 'a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.'") (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014)); *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition").

### Conclusion

This culmination of nearly a year of litigation would provide more than 350 individuals over $98 each, plus prospective relief in the form of changed debt collection practices to address the concerns raised in this action. Class members support the resolution proposed, as evidenced by their strong participation rate and the lack of any objections to the settlement's terms. Plaintiff accordingly requests that this Court grant final approval to the parties' class action settlement. Neither Defendant, nor any class members, oppose this relief.

Dated:  March 9, 2018                    Respectfully submitted,

                                         /s/ Michael L. Greenwald
                                         Michael L. Greenwald
                                         FL Bar No. 0761761
                                         Jesse S. Johnson
                                         FL Bar No. 0069154
                                         Greenwald Davidson Radbil PLLC
                                         5550 Glades Road, Suite 500
                                         Boca Raton, FL 33431
                                         Tel: (561) 826-5477
                                         Fax: (561) 961-5684
                                         mgreenwald@gdrlawfirm.com
                                         jjohnson@gdrlawfirm.com

                                         *Class counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 9, 2018, I electronically filed the foregoing with the Clerk of the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                         /s/ Michael L. Greenwald
                                         Michael L. Greenwald